UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ROACH MANUFACTURING CORP.;
AFTERSORT, INC.; CHARLIE PARKS;
GARY CARTER; JOHN JAYNES; and
JOE MOODY                                                                              PLAINTIFFS

v.                                         CASE NO. 3:09-CV-00029 BSM

NORTHSTAR INDUSTRIES, INC.;
BEST DIVERSIFIED PRODUCTS, INC.;
MARK HAUSTEIN                                                                       DEFENDANTS

### ORDER

Defendants' motion to dismiss is denied.

### I. MOTION TO DISMISS STANDARD

"Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing Fed. R. Civ. P. 12(b)(6)). Accepting as true all of the factual allegations contained in the complaint, the court must review the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*. "The plaintiffs need not prove specific facts in support of their allegations, but they must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Id*. (internal citations omitted).

### II. COMPLAINT

Defendants, Northstar Industries, Inc., Best Diversified Products, Inc., and Mark Haustein, (collectively "defendants") have moved to dismiss counts V, VI, VII, VIII and IX

of the complaint of plaintiffs, Roach Manufacturing Corp., Aftersoft, Inc., Charles Parks, Gary Carter, John Jaynes, and Joe Moody, (collectively "plaintiffs"), that was filed on March 9, 2009. In the complaint, plaintiffs allege that Roach engineers and manufactures conveyors, and that Aftersort markets and sells conveyors exclusively for Roach. In the fall of 2002, Roach and Aftersort arranged for Lowe's to install a prototype unit of a Model TL230 Truck Loader Conveyor in its Statesville, North Carolina facility. Plaintiffs assert that Roach, Aftersort, and Lowe's agreed that the information exchanged in these discussions constituted trade-secrets and would be kept confidential, and that similar arrangements were made with a Toys 'R' Us facility in Maryland. Plaintiffs also assert that the facilities are not open to the public and the Lowe's facility is protected by a guard shack and metal detectors, and only authorized persons were granted access.

The prototype conveyors were installed in November 2002 and were modified over the next several months. In May 2003, Lowe's requested additional modifications, acknowledging that the information exchanged constituted trade secrets. On September 24, 2003, Roach filed a provisional application for patent, which was granted, and "Patent Pending" stickers were placed on the prototype in North Carolina. Representatives of Best Diversified Products ("Best") gained access to the prototype at the Lowe's facility, including inspecting, photographing, and measuring the prototype, but the extent of the access was unknown to Aftersort and Roach at the time.

On October 31, 2003, Aftersort requested that Lowe's keep all information concerning the design of the product strictly confidential as improvements were being made and the

patent was pending. On June 9, 2004, Roach filed an application for a patent. On July 8, 2004, Roach wrote several competitors and entities, including Best, advising them of its patent application and its objection to anyone manufacturing, selling, offering for sale, or using a copy of the conveyor. Patent No. US 7,004,308 was issued to Roach on February 28, 2006.

In August 2006, Best filed a patent application, and although Aftersort became aware of the application shortly thereafter, the confidential nature of the patent application prevented Aftersort from learning of the specific contents. Best's CEO, Jim Markley, represented to Aftersort that Best may have found a way to "get around" the Roach patent, but that it would not be economically feasible for Best to produce Best's patent pending product. Thus, Best entered into an agreement in late 2006 entitling Best to market and sell the Roach conveyor, and the patented Roach conveyor was sold to Best in December 2006. Best displayed the Roach conveyor at a trade show in 2007, and began to take orders for the conveyor at that time. Although Best solicited orders using the Roach conveyor as a model, it filled the orders by manufacturing its own conveyor under its pending patent. Plaintiffs contend that they only became aware of Best's misappropriation of Roach's prototype design when the Best Patent became public in 2008.

Based on these allegations, plaintiffs request the following: declaratory judgment on invalidity of the '075 patent (Count I); correction of inventor pursuant to 35 U.S.C. § 256 (Count II); patent interference pursuant to 35 U.S.C. § 291 (Count III); willful patent infringement (Count IV); trade secret misappropriation (Count V); intentional interference

with contractual relationships or business expectancies (Count VI); fraud (Count VII); unjust enrichment (Count VIII); and civil conspiracy (Count IX).

### III.  MOTION TO DISMISS

Defendants move to dismiss Counts V (trade secret misappropriation), VI (intentional interference with contractual relationships or business expectancies), VII (fraud), VIII (unjust enrichment), and IX (civil conspiracy) as barred by the applicable statute of limitations.

"An action for trade secret misappropriation must be brought within three years after the misappropriation is discovered, or by the exercise of reasonable diligence, should have been discovered. For purposes of this section, a continuing misappropriation constitutes a single claim." Ark. Code Ann. § 4-75-603. Misappropriation of a trade secret is defined as follows:

> (A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret as acquired by improper means; or
>
> (B) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (i) Used improper means to acquire knowledge of the trade secret; or
>>
>> (ii) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>
>>> (a) Derived from or through a person who had utilized improper means to acquire it;
>>>
>>> (b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> (c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

>   (iii) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake;

Ark. Code Ann. § 4-75-601.

The statute of limitations for intentional interference with a contractual relationship or business expectancy, fraud, and unjust enrichment is also three years. Ark. Code Ann. § 16-56-105. "[C]ivil conspiracy-which is not a separate tort and must be based on the underlying tortuous activity-borrows its statute of limitations" from the underlying tort cause of action. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). The statute of limitations for these causes of action "begins to run when there is a complete and full cause of action," and "in the absence of concealment or wrong, when the injury occurs, not when it is discovered." *Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 365 Ark. 106, 110, 225 S.W.3d 369, 372 (2006) (holding that the cause of action for tortious interference accrued, if ever, when the defendant's improper conduct induced plaintiff's former customers to begin doing business with defendant); *Gibson v. Herring*, 63 Ark. App. 155, 157-58, 975 S.W.2d 860, 862 (1998).

Plaintiffs have the burden of showing that the statute of limitations was tolled. *Riddle v. Udouj*, 371 Ark. 452, 461, 267 S.W.3d 586, 593 (2007). "Tolling occurs when the person alleged to have committed the fraud has committed a 'positive act of fraud, something so furtively planed and secretly executed as to keep the plaintiff's cause of action concealed,

or perpetrated in a way that it conceals itself.'" *Id.* (quoting *Hampton v. Taylor*, 318 Ark. 771, 778, 887 S.W.2d 535, 539 (1994). "It is a fraud that a plaintiff, by reasonable diligence, could not have detected or had reasonable knowledge." *Id.*

Defendants assert that because the alleged trade secret misappropriation and any alleged improper conduct occurred in 2002 or 2003, the claims for trade secret misappropriation, intentional interference with contractual relationships and business expectancies, fraud, and unjust enrichment are time barred. Similarly, defendants argue that any conspiracy would have occurred prior to plaintiffs' prototype being first viewed at Lowe's and Toys 'R' Us, and thus, this claim is time barred. Defendants point to paragraphs 20 through 26 of the complaint, as well as Exhibit 3 to the complaint, in support of their assertion that plaintiffs knew or should have known that access to the prototype of their alleged invention was being obtained. Exhibit 3 is a letter dated October 31, 2003, to Lowe's from Aftersort stating, "Because of the Patent Pending status of our conveyor, we ask that you keep any and all information concerning the design of our product strictly confidential."

In response, plaintiffs assert that the causes of action did not accrue until plaintiffs were harmed by the trade secret misappropriation when defendants actually used the trade secrets, which occurred several years after defendants inspected, photographed, and measured the prototype. Thus, plaintiffs assert that, at the earliest, their claims accrued in August of 2006 when defendants filed a patent application involving designs that

incorporated the trade secrets. Plaintiffs note that the complaint alleges that plaintiffs did not discover the misappropriation until 2008 when the Best Patent became public.

Plaintiffs further assert that they have pled facts sufficient to support the application of the doctrine of fraudulent concealment. In particular, plaintiffs note that they have pled that defendants gained unauthorized access to the trade secret, that the access was "unbeknownst" to plaintiffs at the time, and that defendants "secretly" began production on a conveyor identical to the prototype inspected by Best. Plaintiffs note that they have asserted that they did not discover that defendants were implementing the trade secrets until after August of 2006, when Best filed a patent application, and even at that time, the specific contents of the application were not known. Plaintiffs also note that they have asserted that even when questioned, defendants represented that they would not be producing their competing product, and even sought to create a relationship with Aftersort whereby Best would be entitled to market and sell the Roach conveyor.

In their reply, defendants assert that plaintiffs' misappropriation of trade secrets claim should be dismissed because plaintiffs failed to allege that they took any reasonable steps to determine whether any persons had acquired their alleged trade secrets. Defendants assert that such information would have been readily available to plaintiffs, as their business/development partner, Lowe's, controlled access to the facility. Defendants state that plaintiffs and Lowe's were apparently under no contractual agreement to maintain secrecy

of the prototype conveyor, and thus, plaintiffs knew or should have known that any person entering the Lowe's warehouse facility could view the prototype. In support, defendants reason that had such an agreement been in place, there would have been no need for plaintiffs to request that Lowe's keep the information confidential in October 2003. Defendants also note that the July 2004 letter was sent by plaintiffs because they were fearful that defendants had acquired the alleged trade secrets.

Defendants rely on *Quality Optical* in support of their argument that the trade secret misappropriation claim accrued at the time of the alleged acquisition of the trade secret. There, the Arkansas Supreme Court stated that "the acquisition of . . . trade secrets with the requisite mental state, regardless of their use, *could* constitute a misappropriation, which would start the clock on the statute of limitations." *Quality Optical*, 365 Ark. at 109 (emphasis added). In that case, however, the court did not need to decide whether the acquisition alone began the clock because defendant admitted that it began to use the trade secrets in January 1999 and it was clear that plaintiff should have been aware of the misappropriation because most of plaintiff's customers left to do business with defendant shortly after defendant opened the new company. *Id.*, 225 S.W.3d at 372-73.

The record indicates that there are fact questions as to whether the misappropriation was discovered, or by the exercise of reasonable diligence, should have been discovered by plaintiffs more than three years before filing this lawsuit. Furthermore, on the current record,

Case 3:09-cv-00029-BSM   Document 12   Filed 06/26/09   Page 9 of 11

there are fact questions as to whether the application of the doctrine of fraudulent concealment is appropriate.

Defendants also assert that plaintiffs' trade secret misappropriation claim should be dismissed because plaintiffs failed to take action as is necessary to protect their alleged trade secrets. Defendants state that every person who entered the Lowe's or Toys 'R' Us facilities could see the conveyors, including truck drivers, loaders, employees of both entities, and visitors to the locations. Defendants also state that plaintiffs did not have internal or external physical security, did not have an understanding as to who would have access to the product, and did not have entrance or exit interviews of the Lowe's or Toys 'R' Us employees imparting the importance of confidentiality.

In response, plaintiffs assert that the facts alleged in the complaint satisfy the pleading requirement for stating a cause of action for misappropriation of trade secrets. Plaintiffs state that they have alleged that they took extensive steps to protect their trade secrets, and despite these efforts, defendants secretly misappropriated the trade secrets and caused plaintiffs damages.

Although plaintiffs have sufficiently stated a claim for misappropriation of trade secrets under Federal Rule of Civil Procedure 12(b)(6), it is unclear whether plaintiffs can survive a summary judgment motion. Indeed, plaintiffs have alleged that, on more than one occasion, they agreed with Lowe's and Toys 'R' Us that the information exchanged in

discussions constituted trade secrets and would be kept confidential. Plaintiffs also allege that the facilities were not open to the public, were protected by a guard shack and metal detectors, and that only authorized persons were granted access. Additionally, plaintiffs allege that in the fall of 2003, "Patent Pending" stickers were placed on the prototype, and they reiterated to Lowe's that all information concerning the design of the product should be kept strictly confidential.

Further, the allegations regarding the intentional interference with contractual relationships and business expectancies claim are sufficient to satisfy the pleading requirements to survive a motion to dismiss. Defendants assert that plaintiffs' intentional interference with contractual relationships and business expectancies claim should be dismissed because plaintiffs failed to state what constitutes the improper conduct of defendants, which is an element of the cause of action. In response, plaintiffs assert that the improper conduct includes stealing plaintiffs' trade secrets, using plaintiffs' trade secrets, and deceptively soliciting orders using the Roach conveyor as a model and then filling those orders with its own conveyor. Additionally, plaintiffs note that they have alleged that they had valid and existing contracts and business expectancies with various customers, including Mohawk in Dalton, Georgia, and that defendants were aware of these contracts and expectancies.

Finally, defendants' motion for dismissal of plaintiffs' fraud claim is denied. Defendants assert that plaintiffs' fraud claim should be dismissed because plaintiffs failed to state their claims of fraud with particularity or specificity. Defendants assert that plaintiffs simply make the allegations of fraud and do not state what the false representations were and how they relied upon them.

Plaintiffs have pled their fraud claim with particularity and specificity, in that plaintiffs specifically allege in their complaint that defendants falsely represented to plaintiffs that they were not going to produce the patent infringing product and purportedly sought to create a relationship with Aftersort whereby Best would be entitled to market and sell the Roach conveyor. Plaintiffs further allege that after the Roach conveyor was sold to Best in December 2006, Best displayed the Roach conveyor, took orders for the conveyor, and then filled the orders with its own conveyor made under its pending patent.

Accordingly, defendants' motion to dismiss (Doc. No. 4) is denied.

IT IS SO ORDERED this 26th day of June, 2009.

_____
UNITED STATES DISTRICT JUDGE